**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-1069 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 28 |
| | : | | |
| PROCEEDS OF DRUG TRAFFICKING TRANSFERRED TO CERTAIN FOREIGN BANK ACCOUNTS, | : : : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING THE UNITED STATES'S MOTION FOR ENTRY
OF DEFAULT JUDGMENT AND DECREE OF FORFEITURE

### I. INTRODUCTION

This is a civil forfeiture action brought against funds held in several Colombian bank accounts. The government seeks to have the money in the defendant accounts forfeited to the government pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). This matter comes before the court on the government's motion for entry of default judgment and decree of forfeiture *in rem*. Because the government has met its evidentiary burden, the court grants the government's motion.

### II. FACTUAL & PROCEDURAL BACKGROUND

In May 1999, the United States Drug Enforcement Agency ("DEA") began an undercover investigation of a money laundering organization ("DEA Operation"), which provided services to drug traffickers. Compl. ¶¶ 7, 8.a. United States Internal Revenue Service Special Agent Timothy Kunsman worked with the DEA Operation. *Id*. ¶ 7. Between June 1999

1

and April 2003, conspirators in the money laundering organization delivered U.S. currency to undercover operatives whom they believed were professional money launderers. *Id.* ¶ 8.c. Several of these transactions included the transfer of monies to bank accounts in Colombia, South America. *Id.* ¶ 26.

On May 15, 2003, the government filed a verified complaint seeking forfeiture of monies held in thirty-eight Colombian bank accounts. *See generally id.* The government alleges that the funds in the accounts represent drug proceeds and were involved in money laundering. *Id.* ¶ 1. On November 3, 2003, Enrique Ramirez Ordonez, the purported owner of the funds in one of the accounts, filed a reply to the complaint disavowing any knowledge of the defendants named in the related criminal complaint and asserting that the money in the account was derived from a legitimate exporting business. Reply to Compl. ¶¶ 1-2. The court subsequently struck his reply and dismissed his claim pursuant to Federal Rule of Civil Procedure 37 for failure to comply with court orders and to participate in discovery. *See generally* Mem. Op. (Sept. 16, 2008).

The government has dismissed all but five of the claims on accounts originally listed in the complaint after a review of documents provided by the Colombian government revealing that prior to the execution of a warrant *in rem*, the funds in most of the specified accounts were removed or the accounts were closed, thereby preventing the government from bringing the defendant properties within the jurisdiction of the court. *See* Notice of Partial Dismissal (Mar. 11, 2008); 2d Notice of Partial Dismissal (July 12, 2004); 3d Notice of Partial Dismissal (Oct. 22, 2004). On April 27, 2010, the Clerk of the Court declared in default claimants with a potential interest in the five remaining accounts for their failure to plead or otherwise defend against this action. *See* Entry of Default (Apr. 29, 2010). The government now seeks a default judgment and a decree of forfeiture for the funds contained in the remaining defendant accounts.

# III. ANALYSIS

## A. Legal Standard for Default Judgment

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994),

*vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty).

### B. Legal Standard for Civil Forfeiture

Congress has set forth several types of property that are subject to civil forfeiture, two of which are proceeds from money laundering and illegal drug transactions. 18 U.S.C. § 981; 21 U.S.C. § 881. Pursuant to 18 U.S.C. § 981(a)(1)(A), the government may obtain a decree for forfeiture of property that it demonstrates was involved in a money laundering transaction or attempted money laundering transaction in violation of 18 U.S.C. § 1956. 18 U.S.C. § 981(a)(1)(A). 18 U.S.C. § 1956(a) sets forth three definitions of money laundering: (1) conducting or attempting to conduct a financial transaction knowing that the funds are proceeds of unlawful activity with the intent to further the unlawful activity or commit some other crime, or knowing that the transaction is designed to conceal the criminal nature of the money involved; (2) attempted or successful transporting, transmitting or transfering of a monetary instrument or funds between a foreign location and the United States with the intent to further unlawful activity or with the knowledge that the monetary instrument or funds are proceeds of unlawful activity and that the transfer is intended to conceal the criminal nature of the funds or to perpetuate some other crime; (3) conducting or attempting to conduct a financial transaction, or facilitating a crime with property represented to be proceeds of unlawful activity, with the intent of furthering a crime, concealing the nature, location, source, ownership or control of the property believed to

be proceeds of unlawful activity, or avoiding any statutory reporting requirement. 18 U.S.C. § 1956(a).

Like property involved in money laundering, proceeds from illegal drug transactions are subject to forfeiture. 21 U.S.C. § 881(a)(6). To obtain forfeiture under § 881(a)(6), the government must demonstrate that the defendant property is traceable to illicit drug offenses. *United States v. Brock*, 747 F.2d 761, 762 (D.C. Cir. 1984); *United States v. $174,206.00*, 320 F.3d 658, 662 (6th Cir. 2003) (stating that the plaintiff in a civil forfeiture case must show by a preponderance of the evidence that the defendant property is traceable to illicit drug offenses).

### C. The Court Grants the Government's Motion for Default Judgment

The government alleges that the money in the remaining accounts is the product of drug trafficking and money laundering. *See generally* Compl. As the court dismissed the only claim timely submitted, *see* Mem. Op. (Sept. 16, 2008), and the Clerk of the Court has entered a default against all other possible claimants, *see* Entry of Default (Apr. 27, 2010), the court accepts this well-pleaded allegation as true, *see* FED R. CIV. P. 55(a). Moreover, the government has demonstrated a clear path from proceeds from the sale of narcotics in the United States to the funds held in the Colombian accounts through the transactions witnessed and recorded by the DEA Operation. *See* Compl. ¶¶ 3-26.[1] Because the DEA Operation directly facilitated specific transfers of drug proceeds into U.S. bank accounts which were wired to the defendant accounts at the direction of the criminal defendants, the path of the money is well documented and has been verified by the IRS's Criminal Investigations unit. *Id*. ¶¶ 8(c), 26. For instance, on at least sixty-four occasions undercover operatives of the DEA Operation were directed by the criminal defendants to pick up large sums of drug proceeds, deposit them into U.S. bank accounts and

---

[1] The detailed allegations in the complaint are verified by the sworn statement of IRS Special Agent Timothy Kunsman. *See* Compl., Verification.

wire the deposited money to U.S. or foreign bank accounts. *Id*. ¶¶ 19-20. Thus, the government has demonstrated by a preponderance of the evidence that the money in the defendant accounts is subject to forfeiture pursuant 21 U.S.C. § 881 because those funds can be verifiably traced to illegal sales of narcotics, *Brock*, 747 F.2d at 762, and/or were laundered through U.S. bank accounts, *see* 18 U.S.C. § 1956. Moreover, the connection between the sale of narcotics in the United States and the money contained in the defendant accounts is substantial, since each step in the receipt and laundering process was documented by the DEA Operation and verified by Special Agent Kunsman. *See* Compl. ¶¶ 3-26.

Because the government has demonstrated that the money contained in the defendant accounts is subject to forfeiture and the connection between that laundered money and sale of narcotics in the United States is substantial, the government has met its burden for a default judgment. 18 U.S.C. § 983(c); *see also 1998 Tractor*, 288 F. Supp. 2d at 711; *United States v. $21,510 in U.S. Currency*, 292 F. Supp. 2d 318, 320 (D.P.R. 2003). Accordingly, the funds in the remaining defendant accounts shall be forfeited to the government.

## IV. CONCLUSION

For the foregoing reasons, the court grants the government's motion for default judgment and issues a decree of forfeiture. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of December, 2010.

RICARDO M. URBINA
United States District Judge